UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| OSAMA SHALABI, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| vs. | ) | Case No. 4:06CV866 RWS |
| ALBERTO GONZALES, Attorney General of the United States; | ) | |
| MICHAEL CHERTOFF, Secretary of Department of Homeland Security; | ) | |
| EMILIO T. GONZALEZ, Director of U.S. Citizenship and Immigration Services, Department of Homeland Security; | ) | |
| MICHAEL JAROMIN, District Director, Kansas City District Office, U.S. Citizenship and Immigration Services; | ) | |
| CHESTER MOYER, Officer in Charge; St. Louis Sub-District Office, U.S. Citizenship and Immigration Services; | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

Plaintiff Osama Shalabi is a lawful permanent resident of the United States who has filed an application for naturalization with the United States Citizenship and Immigration Services ("USCIS"). Shalabi's application has been pending since July 9, 2003. Shalabi has been interviewed by the USCIS. The USCIS has not yet adjudicated his application. Shalabi has filed this complaint requesting me to either assume jurisdiction over the matter and naturalize Shalabi, or compel the USCIS to make a final determination of Shalabi's application within a specified

time period. Defendants have filed a motion asking that either Shalabi's petition be dismissed, or alternatively, that the matter be remanded to the USCIS for adjudication without a time deadline. Because 8 U.S.C. § 1447(b) grants me subject matter jurisdiction, Defendants' motion to dismiss will be denied. However, I agree with Defendants that remand is appropriate in this case.

I will remand the matter to the USCIS with instructions to make a determination as expeditiously as possible after receiving Shalabi's completed criminal background check from the FBI.

**<u>Background</u>**

The naturalization process begins when the applicant files a Form N-400, "Application for Naturalization." 8 U.S.C. § 1445(a); 8 C.F.R. § 334.2. The USCIS must then conduct a background investigation of the applicant. 8 U.S.C. § 1446(a); 8 C.F.R. § 335.1. At a minimum, the background investigation includes "a review of all pertinent records, police department checks, and a neighborhood investigation in the vicinities where the applicant has resided and has been employed, or engaged in business, for at least the five years immediately preceding the filing of the application." 8 C.FR. § 335.1. The USCIS relies primarily on three background check mechanisms: (i) the Interagency Border Inspection System (IBIS) name check, (ii) the FBI fingerprint check, and (iii) the FBI name check. Typically following the conclusion of the background check, the applicant is interviewed by a USCIS examiner. 8 U.S.C. § 1446(b); 8 C.F.R. § 335.2. During the examination the applicant is tested to determine if the applicant has the required level of English proficiency and knowledge of the history and government of the United States. 8 U.S.C. § 1423(a); 8 C.F.R. § 312.1; 8 C.F.R. § 312.2.

The examination by the USCIS examiner should occur only after the USCIS receives

from the FBI a "definitive response" that a full criminal background check of the applicant has been completed. 8 C.F.R. § 335.2. Sometimes, as in the present case, the USCIS will conduct the examination of an applicant before a full criminal background check is completed in an attempt to expedite the naturalization process.

Ultimately, the USCIS examiner is authorized to make a determination to grant or deny the application. 8 U.S.C. § 1446(d); 8 C.F.R. § 335.3. This determination should occur within the 120 days following the initial examination of the applicant. 8 C.F.R. § 335.3. However, when the examination of the applicant occurs before the background check is completed, 120 days may expire without the background check being finalized. This creates a situation where an applicant can file for review by a district court under 8 U.S.C. 1447(b).

Plaintiff Osama Shalabi is a native of Jordan who became a permanent resident of the United States on April 27, 1998. Shalabi filed a Form N-400 on July 9, 2003. Six months later, on January 6, 2004, Shalabi was interviewed by a USCIS officer. At that time Shalabi passed an English language proficiency test and demonstrated his knowledge of United States history and government. Shalabi submitted additional documentation to the USCIS, which began its background investigation of Shalabi. Currently, the background investigation is pending, and has been pending for over two years. The USCIS maintains that it is unable to adjudicate Shalabi's application until it receives the results of Shalabi's "name check" from the FBI.

Shalabi asserts that a "name check" is not contemplated by 8 C.F.R. § 335.2(b). This assertion is without merit. The regulation states that:

> A definitive response that a full criminal background check on an applicant has been completed includes: (1) Confirmation from the Federal Bureau of Investigation that an applicant does not have an administrative or a criminal record; (2) Confirmation from the

> Federal Bureau of investigation that an applicant has an administrative or a criminal record; or (3) Confirmation from the Federal Bureau of Investigation that two properly prepared fingerprint cards (Form FC-258) have been determined unclassifiable for the purpose of conducting a criminal background check and have been rejected.

§ 335.2(b).  Because § 335.2(b) uses the term <u>includes</u> to define a background check, the conditions that follow that term are not exhaustive.  A "name check" may certainly be read into the requirement of a full criminal background check.

**Legal standard**

Federal jurisdiction is proper only if a case comes within an express congressional grant of jurisdiction.  <u>Missouri ex rel. Missouri Highway & Transp. Comm'n v. Cuffley</u>, 112 F.3d 1332, 1334 (8th Cir. 1997). Congress has expressly limited the jurisdiction of district courts in the naturalization process.  "The sole authority to naturalize persons as citizens of the United States is conferred upon the Attorney General."  8 U.S.C. 1421(a).  Furthermore, "[j]udicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'"  <u>INS v. Aguirre-Aguirre</u>, 526 U.S. 415, 425 (1999) (quoting <u>Ins v. Abudu</u>, 485 U.S. 94, 110 (1988)); <u>See</u> <u>also</u> <u>Palomino v. Ashcroft</u>, 354 F.3d 942, 944 (8th Cir. 2004) ("some deference is appropriate in the immigration context because sensitive political decisions with important diplomatic repercussions may be involved").

One exception to the district courts' limited jurisdiction in the naturalization application process is found in 8 U.S.C.  § 1447(b).

> If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which

the applicant resides for a hearing on the matter. Such court has jurisdiction over the
matter and may either determine the matter or remand the matter, with appropriate
instructions, to the Service to determine the matter.

§ 1447(b).

**Discussion**

**(1)     Subject matter jurisdiction**

Defendants argue that § 1447(b) does not grant subject matter jurisdiction over the present case. Section 1447(b) grants subject matter jurisdiction 120 days "after the date on which the examination is conducted." The issue before me is the meaning of the word "examination" in the statute. Defendants contend that an "examination" under § 1447(b) encompasses the entire background investigation of the applicant. Under this standard an applicant's examination would be finished only when all information is gathered and the review process is completed. Shalabi argues that an "examination" under § 1447(b) occurs when the applicant is initially interviewed by the USCIS. Both parties acknowledge that more than 120 days have passed since Shalabi's initial interview. If the examination occurs at the time of the initial interview, then subject matter jurisdiction is granted. If the examination is an ongoing investigative process, then subject matter jurisdiction would not vest until the background check is completed.

In support of the contention that the "examination" is a process, Defendants' cite <u>Danilov v. Aguirre,</u> 370 F. Supp. 2d 441 (E.D. Va. 2005). As in the present case, the plaintiff in <u>Danilov</u> was interviewed, and more than 120 days passed without an adjudication by the USCIS. <u>Id.</u> at 442. The court held that despite the passage of 120 days after the interview, subject matter jurisdiction was not granted by § 1447(b). <u>Id.</u> at 444. The court reasoned that the plaintiff's interview "did not end the statutorily-required 'examination' and thus trigger the running of the

120 day period." Id. at 443.  Relying on 18 U.S.C. § 1446(b), which is the statutory examination requirement referenced in § 1447(b), the court found that the examination of an applicant was an ongoing process that encompassed all the background investigations conducted by the USCIS and FBI.  Id. at 444.  The statute provides that examinations may include the issuance of subpoenas, the taking of testimony under oath, and the production and review of relevant document.  Id. (citing § 1446(b)).  Additionally, the court found it important that Congress requires the "completion and review of an FBI criminal background investigation of the applicant as a part of the examination process."  Id. at 443-44.  For these reasons, the court determined that both the FBI background checks and the USCIS interview were merely parts of this overall process, and the statutorily required "examination" was only complete when the ongoing investigation and examination of the applicant was completed.  See also Damra v. Chertoff, No. 1:05CV0929, 2006 U.S. Dist. LEXIS 45563, at *6 (N.D. Ohio June 23, 2006) ("the 'examination' of an application for naturalization is a process, not an isolated event; and that process includes all facets of the USCIS background investigation, including the FBI's criminal background investigation").  However, I do not find the reasoning of Danilov to be persuasive.

First, the plain language of § 1447(b) indicates that an "examination" is a discrete event, not an on-going process.  The statute grants the district court jurisdiction 120-days after "*the date on which the examination is conducted*."  8 U.S.C. § 1447(b) (emphasis added).  This implies that there is a single time at which an entire examination occurs.  If an examination were to encompass the entire USCIS investigation, there would be no "date" at which the examination is "conducted."  Instead, the ongoing examination process would be "concluded" on the indeterminate date that the investigative process is completed.

The organization of § 1446 also implies that the investigation of the applicant is separate from the examination of the applicant. Section 1446 (a) addresses what is required for the USCIS <u>investigation</u> of the applicant. Sections 1446 (b) separately addresses what is required for the USCIS <u>examination</u> of the applicant. The separate treatment and requirements of the investigation and examination aspects of the naturalization process indicates that they are discrete events under the statutory scheme.

The USCIS's regulations further support the interpretation that an "examination" occurs at the time of the interview for the purpose of § 1447(b). The regulation concerning the examination of an applicant provides that "each applicant shall appear in person before a Service officer designated to conduct examinations." 8 C.F.R. § 335.2. This language indicates that the USCIS regulations treat an "examination" as an appearance in person before a USCIS officer. Additionally, the same regulation requires that the USCIS conduct an initial examination only after a full FBI background check is complete. <u>Id.</u> This indicates that the initial examination and the FBI background check are separate events, rather than being parts of a continuous examination process.

I therefore join the majority of district courts which have decided this issue in holding that the "examination" under 8 U.S.C. § 1447(b) occurs when the applicant is interviewed by the USCIS. <u>See</u> <u>e.g.</u> <u>Khelifa v. Chertoff</u>, 433 F. Supp. 2d 836, 841 (E.D. Mich. 2006); <u>El-Daour v. Chertoff</u>, 417 F. Supp.2d 679, 681 (E.D. Va. 2005). Because over 120 days have passed since Shalabi's interview, subject matter jurisdiction exists.

Once jurisdiction is established, a district court has two options under § 1447(b). The

district court may hold a hearing and decide the matter, or it may remand the matter with appropriate instructions to the USCIS for determination.

**(2)     Hearing or Remand**

"Generally speaking, a court . . . should remand a case to an agency for decision of a matter that statutes place primarily in agency hands." INS v. Ventura, 537 U.S. 12, 16 (2002). As discussed above, the executive branch is generally given great deference in immigration matters. More specifically, a district court, like the USCIS, is not in a position to decide an application for naturalization until the FBI completes the required criminal background investigations. A district court is not equipped to conduct such an investigation to determine if an applicant presents any risk to national security or public safety. El-Daour, 417 F. Supp.2d at 684. To conduct a hearing without the completion of a background check "would contravene Congress's intent that an FBI background is to be completed prior to the adjudication of every naturalization application." Essa v. United States Citizenship & Immigration Service, No. 05-1449, 2005 U.S. Dist. LEXIS 38803, at *8 (D. Minn. Dec. 14, 2005). Therefore, I find that it is not appropriate for me to make a determination of Shalabi's naturalization application. Instead, I will remand this matter to the USCIS for determination of Shalabi's application.

Shalabi requests that if the case is remanded to the USCIS, that the USCIS should be given instructions to make a determination of Shalabi's application by a specified deadline. For many of the same reasons why I am not in an advantageous position to decide the matter, the USCIS cannot make a determination without the assurances of a completed background check. More importantly, Congress has explicitly forbidden the USCIS from using any of its funds for completing the adjudication of an application for naturalization before a full criminal background

check is completed by the FBI. Act of Nov. 26, 1997, Pub. L. No. 105-119, 111 Stat. 2440, 2448-49 (appropriating money for the Departments of Commerce, Justice, and State).[1] Because the FBI has not yet completed its background check of Shalabi, the USCIS cannot currently make a determination of Shalabi's application. Essa, 2005 U.S. Dist. LEXIS 38803 at * 6-7.

Finally, Shalabi asks that the Court order Defendants to expedite Shalabi's FBI background check, which would enable the USCIS to make an expedited determination on Shalabi's application. This could potentially be accomplished in two different ways.

First, Shalabi requests that I compel the FBI to complete Shalabi's background check. The Mandamus Act grants district courts jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. "[T]he writ of mandamus is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief and only if the defendant owes him a clear nondiscretionary duty." Taylor v. Barnhart, 399 F.3d 891, 894 (8th Cir. 2005).

Shalabi cannot establish that the FBI owes him " a clear nondiscretionary duty." There is no statute or regulation which imposes a deadline for the FBI to complete a criminal background check. Furthermore, the USCIS can only determine the matter only after "a full criminal background check of an applicant has been completed." Pub. L. No. 105-119. A background check that is rushed and incomplete due to an artificial, court imposed deadline would not meet

---

[1]The statute provides that "during fiscal year 1998 and each fiscal year thereafter, none of the funds appropriated . . . shall be used to complete adjudication of an application for naturalization unless the Immigration and Naturalization Service has received confirmation from the Federal Bureau of Investigation that a full criminal background check has been completed." Id.

the statutory and regulatory requirements of a "full criminal background check" before the USCIS can make a determination on an application.

Alternatively, when I remand the matter to the USCIS, Shalabi requests that I give instructions that the USCIS should use any procedures available to expedite Shalabi's background check. While Defendants acknowledge that the USCIS has the power and procedure to expedite FBI background checks, Defendants argue that ordering the USCIS to expedite Shalabi's background check would upset the efficiency of the agency. Shalabi argues that since more than two years have passed while his background check was pending, he should be allowed an expedited background check. However, only the FBI and the USCIS are in a position to know what resources are available to conduct the background checks, and whether an expedited background check is feasible or efficient. See Sze v. INS, No. C-97-0569, 1997 U.S. Dist. LEXIS 10822, at *26 (N.D. Cal. July 24, 1997) ("[T]he agency is in a superior position to view its projects as a whole and to optimally allocate its resources."). This fact, combined with the deference given the executive branch in immigration matters, leads me to conclude that the decision whether to expedite Shalabi's background check is an issue more appropriately left to the USCIS.

I understand Shalabi's desire to become an American citizen, and sympathize with the delay that he must endure while the application process is under way. On the other hand, I am not in a position to give him the relief he has requested. "Unfortunately, delays of this nature are inevitable and becoming more frequent in light of heightened security concerns in the post-911 world." Alkenani v. Barrows, 356 F. Supp. 2d 652, 657 (N.D. Tex. 2005).

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss is **DENIED**, and Defendants' Motion for Remand is **GRANTED** with instructions that the USCIS make a determination as expeditiously as possible after the completion of Shalabi's criminal background investigation.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 23rd day of October, 2006.